English v. Harris.

---

No. 22,452.

A. G. ENGLISH, *Appellee,* v. J. F. HARRIS, *Appellant.*

### SYLLABUS BY THE COURT.

1. AGENCY—*Sale of Real Estate—Purchaser Found—Commission Earned.* The evidence in an action for a commission on the sale of real estate examined, and held to show that the plaintiff had secured purchasers who were ready, willing and able to buy on the precise terms prescribed by the owner, and that the plaintiff had earned his commission.

2. TRIAL—*Instructions—No Error.* Objections to instructions given and refused, examined, and held to be without merit.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed January 10, 1920. Affirmed.

*C. R. Douglas,* of St. John, for the appellant.

*Paul R. Nagle,* and *Harry T. Gray,* both of St. John, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sued the defendant for a real-estate dealer's commission on a sale of six hundred acres of land.

On October 14, 1918, the defendant gave the plaintiff written authority to sell the land at $10 per acre—

"Exhibit 'A.'

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"Price $6,000, $2,000 cash, $1,000 each year thereafter at 6 per cent

interest payable annually, contract for deed, . . . Amount to be paid agent is $200."

On November 5, 1918, the plaintiff closed a deal with George M. Childs and R. D. Beck for the sale of the property, and reduced the terms thereof to writing, in part, as follows:

"For the consideration of Six Thousand Dollars, to be paid as follows, $500 cash in hand, the receipt of which is hereby acknowledged, and the further sum of Fifteen Hundred Dollars, as soon as the first party submits abstracts for the above real estate showing a good merchantable title, and $1000 Nov. 5, 1919, and $1000 Nov. 5, 1920—$1000 Nov. 5th, 1921, $1000 Nov. 5th, 1922, deferred payments to draw 6 per cent interest from this date, interest payable annually, on the 5th day of November each year. First party is to execute and deposit general warranty deed, with a copy of this contract in escrow in the Macksville State Bank, to be delivered only when the final or last payment and all accrued interest is fully made, parties of the second part are to accept this contract in lieu of deed, till the entire amount has been fully paid, the $500 earnest money is to be held by the said Macksville State Bank till abstracts have been submitted and passed on by the attorney for the second parties, at which time it is to be paid to first party. Second parties have the privilege to pay the whole or any part of the deferred payments, in even multiples of $100, on any interest paying period, interest to cease on amounts so paid. . . . It is further agreed and understood that all improvements are to remain and go with said real estate as they now stand, including all fencing, well, and windmills and tanks. . . . Second parties to have immediate possession of the above real estate."

The defendant declined to be bound by the contract made for him by his agent, the plaintiff, contending that there was a substantial difference between it and the terms upon which he had authorized the plaintiff to sell the property.

Plaintiff contended that there was no material change in the terms, that the terms were substantially those upon which he was authorized to sell the property; that the $500 cash which plaintiff had exacted from Childs & Beck was "earnest money," and that Childs & Beck were ready to pay down the entire sum of $2,000 as soon as they could be assured that defendant had merchantable title to the property; and, furthermore, that Childs & Beck were ready, able and willing to purchase the property on the precise terms prescribed by defendant.

As defendant refused to pay the commission, this action was begun, issues were joined, and a verdict and judgment were

rendered for plaintiff. The jury answered certain special questions:

"2. Did the plaintiff ever procure any purchaser ready, willing and able to enter into a contract for a deed to said land with defendant, except upon the terms contained in the contract executed between A. G. English as agent of J. F. Harris and R. D. Beck and Geo. M. Childs of the date of Nov. 6, 1918? A. Yes.

"3. Did the defendant ever agree to the terms and conditions of the contract executed between A. G. English and R. D. Beck and Geo. M. Childs? A. No.

"6. Was the cash payment of $2,000 ever tendered to defendant? A. No.

"7. Did the defendant at any time ever agree to execute a contract for a deed to his land except upon a cash payment to him in the sum of $2,000? A. No."

Defendant assigns error in overruling his demurrer to the evidence and his motion for judgment on the jury's special findings, and in the instructions given and refused.

A scrutiny of the special findings shows that the jury was of opinion that the detailed contract of November 5 was substantially different from the one which the plaintiff's agent was authorized to make. Therefore, the written contract of November 5 must be considered as unauthorized, and the defendant was not bound thereby, nor was he liable for a commission to plaintiff for effecting that unauthorized bargain. But the jury also found (special finding 2) that the agent succeeded in finding buyers who were ready, willing and able to buy the land on the precise terms dictated to the agent English by the defendant owner on October 14. The evidence of that fact was established by the agent and by Beck & Childs, the purchasers. While these witnesses believed that the written contract substantially conformed to the authorized terms, the plaintiff testified—

"The purchasers were willing and are willing now to make a new contract if it be made to comply with the original sale agreement.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Mr. English, was the purchaser whom you produced willing to take the land upon any other terms than those contained in the agreement which you had signed Mr. Harris's name to? A. Yes, they were."

Childs testified—

"Q. Were you from that date to the present time, able and ready and

willing to comply with the requirement of the sale of that land as set forth in 'Exhibit A'? A. I was. Yes, sir.

"Q. Are you now able, ready and willing to purchase that land according to that sale agreement or contract entered into between Mr. Harris and Mr. English? A. Yes, sir.

"Q. And have you ever since on or before the 1st day of November been able, ready and willing to comply with that contract for the sale of that land? A. Yes, sir."

Beck also testified that he and Childs had negotiated for the purchase of defendant's land, and that he had been and still was ready, willing and able to buy the property on the terms prescribed by the owner on October 14.

The evidence quoted is sufficient to show that plaintiff had accomplished all that was necessary for him to do to earn his commission; and it follows that the demurrer to plaintiff's evidence and defendant's motion for judgment on the special findings were properly overruled.

Fault is found with the trial court's instructions 9 and 10 which pertained to the law of the case if the jury had been inclined to the view that the detailed contract of November 5 was in substantial conformity with the written terms of sale prescribed by defendant on October 14. Since the jury found that such was not the case, and the case did not turn upon matters covered by those instructions, the accuracy of these instructions as statements of law needs no discussion.

A final contention of the defendant was, that although he prepared and asked an instruction covering his theory of law, which the court indorsed "Given in substance," yet it was not so given. The court gave instructions covering all phases of the controversy. (*Cook v. Railway and Bridge Co.*, 101 Kan. 103, 106, 107, 165 Pac. 803.) It would serve no purpose to quote them here, but a reëxamination of instructions Nos. 12 and 13 given by the trial court should convince the appellant and his counsel that their objection to the ruling "Given in substance" is without merit.

The judgment is affirmed.